# EXHIBIT A

Filed
D.C. Superior Court
08/28/2020 15:06PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | COMPLAINT |
| A 501(c)(3) | | |
| 280 E. 1st Ave. | * | |
| Broomfield, CO 80038 | | Case No. **2020 CA 003806 B** |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | DEMAND FOR JURY TRIAL |
| | * | |
| THE KRAFT HEINZ COMPANY | | |
| | * | |
| Serve on: | | |
| Corporation Service Company | * | |
| 251 Little Falls Drive | | |
| Wilmington, DE 19808 | * | |
| | | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>COMPLAINT</u>

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through their counsel, bring this action against Defendant The Kraft Heinz Company ("KHC" or "Defendant") regarding the deceptive labeling, marketing, and sale of Maxwell House decaffeinated original roast  (29.3oz)  coffee products ("Product")[1], in the District of Columbia, that is marketed as "100% Arabica Coffee" and "high-quality" under KHC's majority-owned Maxwell House trademark. Contrary to Defendant's promises and assurances, CLP conducted independent testing and discovered the presence of methylene chloride in the Product; thus, the Product was not pure and was adulterated with quantifiable amounts of a contaminant. Plaintiff alleges the following based upon information, belief, and the investigation of its counsel:

---

[1] Discovery may demonstrate that additional Maxwell House Products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional pet food items identified through the course of discovery.

## Introduction

1. Due to concerns about heath, consumers, to include D.C. consumers, are increasingly considering how their food and beverages are processed and prepared.

2. In a national survey of over a thousand consumers funded by CLP, 76% of consumers agreed with the statement, "I want to buy the cleanest, best products available on the market."

3. Sixty eight percent (68%) of consumers cite residues as posing the greatest food safety risk,[2] which is the second largest concern of consumers, following only foodborne illnesses (75%).

4. Considering this new focus on local, fresh, and healthy food, processed food manufacturers have introduced onto supermarket shelves hundreds of processed foods claiming, to be "natural," "naturally flavored," "made with natural ingredients" or "pure."[3]

5. Not surprisingly, the demand for products that provide assurances about how they are prepared and produced has increased.[4]

6. Of the aforementioned products, Coffee is one of the most popular beverages in the United States, to include the District of Columbia.[5]

7. A study of U.S. consumers found that coffee is consumed sixteen percent (16%) more regularly than tap water[6]

---

[2] Sloan, Elizabeth, *Transparency Key in Quest for Consumer Confidence in Food,* (April 16, 2020), https://www.foodsafetynews.com/2020/04/transparency-key-in-quest-for-consumer-confidence-in-food/
[3] Kwata, Amy, *Natural foods are not always what they claim to be.* (May 24, 2019), https://www.wmbfnews.com/2019/05/22/natural-foods-are-not-always-what-they-claim-be/
[4] *Id.*
[5] *The Caffeine Fix: Coffee Consumption, History, Trends, & Industry Statistics*, (February 22, 2020), https://muchneeded.com/coffee-consumption-statistics/
[6] *Id.*



Figure 1

8. Additionally, Consumers do not merely drink their coffee; they are also concerned with learning more about the Product. The below table illustrates the amount of coffee-based internet searches by state.[7]  See figure below.



Figure 2

9. Not only is coffee a popular beverage, but the percentage of the consumer population who is

---

[7] *Id.*

looking for their food to be clean is likely to grow.[8]

10. Caffeine can have many side effects, to include, gastrointestinal, cardiovascular, hematologic, hepatic, metabolic, ocular, respiratory, and nervous system.  Caffeine can also increase depression and anxiety.[9]

11. Caffeine has also been shown to affect pregnancy. Caffeine, as well as the other contents of coffee, crosses the placenta, and may have unwanted side effects on a fetus.[10]

12. The negative effects of caffeine make decaffeinated coffee appealing to a more vulnerable demographic, including, but not limited to the elderly, pregnant women, and those with chronic medical conditions. Medical doctors often recommend their patients with chronic health conditions, such as hypertension, avoid caffeine.

13. KHC knows that consumers seek out and wish to purchase pure and ingredient conscious coffee, particularly in decaffeinated blends.

14. To capture this market, KHC's majority-owned Maxwell House trademark advertises and promotes the Product as "high-quality" and "100% Arabica and Robusta coffee beans." *See* **Figure 3 and 4 below.**

---

[8] Shoup, Mary Ellen, *The Universal Appeal of Clean Label, The Percentage of the Population Looking for Clean is Likely to Grow*, (June 21, 2019), https://www.foodnavigator-usa.com/Article/2019/06/21/The-universal-appeal-of-clean-label.The-percentage-of-the-population-looking-for-clean-is-likely-to-grow#

[9] *Caffeine side effects*, (June 29, 2019), https://www.drugs.com/sfx/caffeine-side-effects.html

[10] American Pregnancy Association, *Caffeine During Pregnancy*, (July 17, 2020), https://americanpregnancy.org/pregnancy-health/caffeine-intake-during-pregnancy/



**Figure 3**

Decaf Original Medium Roast Ground Coffee Enjoy the classically rich taste of Maxwell House's signature blend, but without the caffeine. This decaf coffee is a premium quality blend of Arabica and Robusta beans, naturally decaffeinated to offer up the same great taste and aroma as a traditional medium roast. Good to the Last Drop Revitalize your senses and refresh your mind with this smooth blend of medium roast decaf coffee, perfectly packed into a resealable 11 oz. canister for optimal freshness and flavor. Perfect for use in all coffee makers, this package makes up to 90 cups of coffee that can be enjoyed any time of day.

Read Less

**Figure 4**

15. KHC produces a Product that is sold to Consumers through retail stores (to include within the

District of Columbia), and online.

16. The claims of purity are false, deceptive, and misleading. The Product is not transparent regarding its "100% Arabica and Robusta Coffee beans," as it contains quantifiable amounts of Methylene Chloride.[11]

17. The presence of Methylene Chloride in the Products also renders them adulterated under DC Code §48-103 *et seq.*

18. Methane Chloride, is a solvent probably carcinogenic to humans.[12]

19. In stark contrast to these claims, a study performed by the Clean Label Project found that 60% of KHC's competitors contained no detectable levels of Methylene Chloride.[13]

20. Methylene Chloride or dichloromethane is a colorless, nonflammable, and volatile liquid chlorinated hydrocarbon.  It is commonly used as a solvent in paint removers, a solvent in the manufacture of pharmaceuticals, and as a degreasing and blowing agent for industrial use.[14]

21. The Product in question is:

    a.  Maxwell House Decaffeinated Original Blend 29.3oz

22. Plaintiff purchased the Product for the purpose of evaluation by a third-party analytical chemistry laboratory. Quantitative testing performed by that laboratory indicated that the Product purchased by Plaintiff contained amounts of methylene chloride.

---

[11] U.S. Food and Drug Administration, CFR Title 21 *at §*173.255,( LexisNexis 2012)
[12] IARC Monographs, *Dichlornethane,* (July 17, 2017), https://monographs.iarc.fr/wp-content/uploads/2018/06/mono110-04.pdf.
[13] The Clean Label Project, *The Truth Behind Decaffeinated Coffee,* (July 17, 2018), https://cleanlabelproject.org/wp-content/uploads/DecafStudyResults-1.jpg.
[14] National Library of Medicine, *Dichloromethane,* (July 17, 2018), https://pubchem.ncbi.nlm.nih.gov/compound/Dichloromethane.

23. This testing suggests that the above-mentioned contaminant is present in the Product, or at a minimum, that KHC makes no efforts to confirm that it is not present.  As a result, D.C. consumers who are led to believe that the Product is assuredly pure coffee, in fact bear the risk of purchasing products that are not free of quantities of methylene chloride.

24. D.C. consumers are enticed to purchase this Product over the products of KHC's competitors on the basis of these false and misleading purity and superiority claims.

25. A reasonable D.C. consumer would not expect products with 100% coffee claims to contain methylene chloride, a commonly used solvent in paint removers, and is a probable carcinogen to humans.  Likewise, Consumers would not expect products to be adulterated to contain contaminants.

26. In a study funded by CLP, 63% of coffee drinkers said they would switch brands entirely if they learned their preferred coffee brand contained residual solvents that were known cancer-causing agents. An additional 13% would decrease the amount they purchased of that coffee.

27.  Moreover, this Product is being used primarily by an already at-risk population including, but not limited to, females who are pregnant, those who have been diagnosed with arrhythmias, etc.

28. In sum, KHC is deceiving D.C. consumers into believing that the Product is pure 100% coffee when, in fact, it is not pure and contains Methylene Chloride, where the majority of their competitors do not. Further, KHC's Product is adulterated with quantifiable levels of a contaminant.

29. KHC's false and misleading representations and omissions, including any tendency to mislead or omit violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code §28-3901, *et seq.*

30. KHC's labeling and advertising of its Maxwell House Product tends to mislead and is materially

deceptive about the true nature, quality, and ingredients of the Product, Plaintiff Clean Label Project brings this deceptive advertising cause on behalf of the themselves and the general public, and seek relief, including but not limited to, an injunction to halt KHC's false and misleading marketing and sale of Maxwell House Products.

## Jurisdiction and Venue

31. This Court has personal jurisdiction over the parties in this case.  Plaintiff, by filing this Complaint, consents to this Court having personal jurisdiction over them and this matter.

32. This Court has personal jurisdiction over Defendant pursuant to D.C. Code 13-423.  Defendant have sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them due to the fact, *inter alia,* Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise purposefully avails themselves of the laws of the District of Columbia through their marketing and sales of the Product in the District of Columbia.

33. This Court has subject matter jurisdiction over this action pursuant to D.C. Code 28-3905(k)(1)(B), (k)(1)(C) and (k)(2).[15]

## Parties

34. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose mission is to educate the public and enable consumers to make informed shopping choices.

35. CLP performs its work throughout the United States, including in the District of Columbia.

36. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and

---

[15] There is no diversity jurisdiction, as the amount in controversy does not exceed the standard.

publishes top and bottom performers on its website free of charge.

37. CLP published an informational white paper on the issue of residual solvents in the area of decaffeinated coffee in January 2020.[16]

38. CLP was formed in 2016 with the goal of reducing contamination across all consumer products.

39. CLP has an interest in food label truth and transparency and consumers' right to know what is in the products they purchase.  To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

40. In October 2019 Clean Label Project purchased the Product as well as 24 other decaffeinated coffee products in order to evaluate their claims of purity.

41. At all times herein, The Kraft Heinz Company was a Delaware corporation that maintains its principal place of business at 1 PPG Place, Pittsburgh, PA 15222.

42. Maxwell House is a majority-owned and licensed trademark of the Kraft Heinz Company.

43. Defendant markets and distributes the Product online and in retail stores in the District of Columbia and throughout the United States.

44. Upon information and belief, Defendant has caused harm to the general public of the District of Columbia.

45. Plaintiff, acting on behalf of the general public as private attorneys pursuant to D.C Code §28-3905(k)(1)(C)-(D).

46. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-

---

[16] The Clean Label Project, *Decaf Coffee Our Point of View,* (January 6, 2020), https://cleanlabelproject.org/decaf-coffee-white-paper/

interest organizations pursuant to D.C. 28-3901(a)(15).  Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

### The Dangers of Methylene Chloride

47. Methylene chloride is a colorless, odorless, volatile liquid chlorinated hydrocarbon.  It is primarily used as a solvent in paint removers, a solvent in the manufacturing of pharmaceuticals, or a degreasing and blowing agent for industrial use.

48. A study done by the National Toxicology Program indicated that methylene chloride fed to rats and mice caused cancer of the liver and other organs.  Subsequently, the FDA concluded that methylene chloride is a carcinogenic to animals when inhaled and may be carcinogenic to humans. As a result, the FDA banned the use of methylene chloride in cosmetics.[17]

49. Due to its negative effects, Methylene chloride has been regulated by multiple regulatory agencies to include the U.S. Environmental Protection Agency, the U.S. Department of Labor Occupational Safety and Health Administration, and the World Health Organization.[18]

50. Residual solvents are not a necessary or unavoidable byproduct of the decaffeination process. Coffee brands can either use a different, less toxic method or can properly remediate any residual solvents through a standard clean-up process.

---

[17] Hitchcock, Liz, *Safer chemicals, healthy families. Consumer Sales of Deadly Paint Strippers Banned but Americans Still at Risk*, (November 22, 2019), ), https://saferchemicals.org/2019/11/22/consumer-sales-of- deadly-paint-strippers-banned-but-americans-still-at-risk/
[18] Hermitanio, Maui, *EPA Bans Household Use of Toxic Paint Stripping Chemical Methylene Chloride*, (March 18, 2019), http://www.techtimes.com/articles/239802/20190318/epa-bans-household-use-of-toxic-paint-stripping-chemical-methylene-chloride.htm

**Consumers Who Drink Decaffeinated Coffee**

51. Caffeine, while having some well-documented benefits, has also been found to have negative effects on sections of the population, to include those with heart disease as well as pregnant woman.

52. The American College of Cardiology has indicated an association between documented atrial fibrillation episodes and coffee intake.[19]

53. The American Pregnancy Association has encouraged women to forego caffeinated coffee intake while pregnant.[20]

54. The March of Dimes released a statement indicating that pregnant women should limit caffeine intake.[21]

55. Additionally, those coffee drinkers who are consuming multiple cups of coffee per day, decaffeinated coffee is a reasonable option to reduce the caffeine intake.

56. Accordingly, caffeine restriction and decaffeinated coffee use is related to illness in some persons.[22]

---

[19] American College of Cardiology. *Drinking up to Three Cups of Coffee Per Day May be Safe and Protective,* https://www.acc.org/Error/NotFound?item=%2fabout-acc%2fpress-release%2f2018%2f04%2f16%2f13%2f25%2fdrinking-up-to-three-cups-of-coffee-per-day-may-be-safe-protective&user=extranet%5cAnonymous&site=acc

[20] American Pregnancy Association, *Caffeine Intake During Pregnancy,* (July 17, 2020), https://americanpregnancy.org/pregnancy-health/caffeine-intake-during-pregnancy/

[21] March of Dimes. *Caffeine in Pregnancy,* https://www.marchofdimes.org/404.aspx?aspxerrorpath=/pregnancy/caffine-in-pregnancy.aspx

[22] Clean Label Project, Clean, *Pure, Science. Decaf Coffee, Our Point of View,* Annals of Epidemiology, Traits of Persons Who Drink Decaffeinated Coffee, (July 17, 2020), https://www.scientificamerican.com/article/how-is-caffine-removed-t/

11

| Traits of a Decaffeinated Coffee Drinker | Increased Associations of Decaffeinated Coffee Drinkers |
|---|---|
| Less likely to be heavy coffee drinkers | Older Age |
| Less likely to be smokers | Females |
| Less likely to drink alcohol | African American |
| Less likely to drink caffeinated soda | Use of special diets |
| More likely to use medication | Cardiovascular issues |
| More likely to have an illness | Gastrointestinal issues |
| | Neuropsychiatric issues |

**Figure 5**

57. The population that consumes decaffeinated coffee is a very specified and vulnerable one, consisting of those consumers who are protecting against health concerns created by caffeine intake.

**The Process of Decaffeination**

58. There are two methods for decaffeination of coffee, non-solvent based, and solvent based.

59. Non-solvent based decaffeination uses water as opposed to chemicals and relies on temperature to remove caffeine from the coffee beans.[23]

60. Solvent-based decaffeination uses chemicals to remove caffeine from the coffee beans.[24]

61. While, in recent years, many coffee manufacturers have switched to safer decaffeination methods, some companies continue to use solvent-based decaffeination processes.[25]

62. The common solvent used in solvent-based decaffeination is methylene chloride.[26]

---

[23] Scientific American, *How is Caffeine Removed*, (July 17, 2020), https://www.scientificamerican.com/article/how-is-caffine-removed-t/
[24] *Id.*
[25] Consumer Reports. Is Decaffeinated Coffee Bad For You? How Caffeine is Stripped From Coffee-And What That Means For Your Health. https://www.consumerreports.org/coffee/is-decaffeinated-coffee-bad-for-you/
[26] *Id.*

**Factual allegations**

63. KHC is aware that there are health risks associated with the consumption of caffeine, which is contained in regular coffee products.

64. It follows that, KHC is aware that consumers are concerned with the contents and ingredients of their food and beverages.

65. KHC is also aware that consumers seek decaffeinated coffee for specific reasons, many of which are health related.

66. Further, KHC is aware that the consumers who seek out decaffeinated products are a vulnerable group of consumers to whom product contents are of a heightened importance.

67. KHC is aware that solvent-based decaffeination uses the solvent methylene chloride.

68. KHC is aware consumers seek out decaffeinated coffee that is pure and free of chemicals.

69. The Product is neither 100% coffee nor higher quality than competing products, and contains the solvent methylene chloride.

70. The Product is adulterated with quantifiable levels of a contaminant.

71. Methylene chloride in specific amounts is an unsafe solvent to humans and is even more dangerous to a vulnerable market who seeks out and consumes decaffeinated coffee.

**KHC's Marketing is Misleading and Omits Material Facts**

72. To capture the aforementioned growing market seeking out products that are pure for health and other concerns, KHC markets the Product as pure "100% Arabica and Robusta Coffee Beans."

73. In figure 6 below, the promise and assurance of expertise can be found on the right upper corner

13

of the packaging.



**Figure 6**

74. KHC's Maxwell House brand further encourages its superiority on its website when it comes to the content of its coffee.

75. KHC's Maxwell House brand also makes promises on social media platforms such as Facebook and Twitter. Informing consumers of their slogan "Good until the last drop" and promising that they take pride in "doing things right" when it comes to making KHC's Maxwell House Products.



**Figure 7**



**Figure 8**

76. KHC's promises of purity on its packaging, website and marketing, give consumers a false expectation that the Product will not contain chemicals or solvents that are harmful to humans.

77. Unfortunately for consumers, the Product in fact contains methylene chloride, a regulated solvent due to its toxic nature, at levels that exceed the levels found in competitor products consumers might otherwise purchase, but for KHC's purity claims.

**The Presence of Methylene Chloride in KHC's Maxwell House Decaffeinated Coffee**

78. CLP purchased the Product for the purposes of testing on October 15, 2019 and shipped the Product to the laboratory on October 16, 2019.

79. Quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product purchased by Plaintiff as well as other samples of decaffeinated coffees.

80. The testing utilized was a blind testing to fully protect impartiality.  All decaffeinated coffees, to include Plaintiff's Product, were sampled out into conical tubes and numbered.  The product name and corresponding number was maintained exclusively by CLP to protect independence and confidentiality.

81. The results are noted in parts per billion (ppb).

   a.  As a result of the Quantitative testing, the sample of Plaintiff's Product yielded a methylene chloride concentration of 50ppb.

**KHC Knew or Should Have Known its Representations Were False**

82. KHC holds itself out to the public as a source of pure and superior products.

83. KHC knew or should have known what representations it made on the labels of the Product.

KHC also knew or should have known how its food is sourced and processed (as it made specific promises in figures 6 and 8 above), specifically the decaffeination process; therefore, KHC knew or should have known that the Product contains levels of methylene chloride.

84. KHC knew, or should have known, the facts demonstrating that the Product was mislabeled, falsely advertised, and adulterated.

85. D.C. consumers rely on label representations and marketing information in making purchase decisions.

86. KHC made false, misleading, and deceptive representations and omissions intending for D.C. consumers to rely upon those representations and omissions in purchasing the Product.

87. KHC knows that D.C. consumers seek out pure coffees that consumers believe do not contain unnatural or dangerous chemicals or solvents and are not adulterated.

88. Upon information and belief, KHC has failed to remedy the problem with the Product, thus causing ongoing harm to D.C. consumers.

89. D.C. consumers are at risk of real, immediate, and continuing harm if the Product continues to be sold with misleading and/or deceptive representations or omissions.

90. Reasonable consumers do not expect a product represented and advertised as "100% Arabica and Robusta Coffee beans" to contain harmful chemicals and solvents.

## Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act

91. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project brings this claim on behalf of themselves and the general public of the District of Columbia, for KHC's violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 *et seq.*

92. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

93. KHC has labeled and advertised the Product as pure and superior and has otherwise presented an image and marketing materials suggesting that the Product is pure, or not containing chemicals or solvents, when in fact the Product contain levels of methylene chloride unsafe for human consumption.

94. KHC adulterated the Product with the presence of Methylene Chloride.

95. KHC's advertising of the Product misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that KHC states and implies.

96. The Product lacks the characteristics, ingredients, benefits, standards, qualities, or grades that KHC states and implies.

97. KHC's misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

98. KHC knowingly did not sell the Product as advertised.

99. The facts as alleged above demonstrate that KHC has violated the CPPA, D.C. Code §28-3901 *et seq*.

100. KHC's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

101. The Clean Label Project has a sufficient nexus to D.C. consumers of the Product to adequately represent their interests.

102. Due to the fact that KHC misrepresents the characteristics, ingredients, and benefits of the Product, misrepresents the standard, quality, and grade of the Product; misrepresents, fails to

18

state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Product; and advertise the Product without the intent to sell the Product as advertised, and has adulterated the Product.

103. KHC's marketing of the Product as "100% Arabica and Robusta Coffee beans" violates D.C. Code §28-3901 *et seq.* Specifically, KHC has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

    a.   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; …

    d.   represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

    e.   misrepresent as to a material fact which has a tendency to mislead; …

    f.   fail to state a material fact if such failure tends to mislead

        f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

    h.   advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

104. Additionally, KHC has violated D.C. Code 28-3904 *et seq,* pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103 as the presence of this contaminant renders the Product "injurious to health."

105. KHC is a "person" within the meaning of D.C. Code §28-3901(a)(1), and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-

3901(a)(7).

106.   Pursuant to D.C. Code §28-3905(1)(C), "[a] nonprofit organization may, on behalf of itself or

any of its members, or on any such behalf and on behalf of the general public, bring an action

seeking relief from the use of a trade practice in violation of a law of the District of Columbia,

including a violation involving consumer goods or services that the organization purchased or

received in order to test or evaluate qualities pertaining to use for personal, household, or

family purposes."

107.   Clean Label Project (CLP) is a nonprofit organization pursuant to D.C. Code §28-

3905(k)(1)(C) that purchased the Product in order to test or evaluate their qualities.

108.   Pursuant to D.C. Code §28-3905(k)(1)(D)(i), "public interest organizations may, on behalf of

the interests of a consumer or class of consumers, bring an action seeking relief from the use by

any person of a trade practice in violation of a law of the District if the consumer or class could

bring an action under subparagraph (A) of this paragraph for relief from such use by such

person or such trade practice."

109.   The only limitation on this power of a public interest organization to act on behalf of consumers

is that the public interest organization must have "sufficient nexus to the interests involved of

the consumer or class to adequately represent those interests." D.C. Code §28-

3905(k)(1)(D)(ii).

110.   As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and

educating consumers, including consumers in the District of Columbia, in the arena of clean

and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency

to food and consumer product labeling. In addition, Plaintiff has retained the undersigned

competent counsel, to pursue this action, and Plaintiffs have previously represented District

consumers in similar actions under the CPPA.

111. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and bring this action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

112. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

113. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

### Prayer for Relief

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under

D.C. Code §28-3905(k)(2)(A-F):

A. A Declaration that KHC's conduct is in violation of the CPPA.

B. An Order enjoining KHC's conduct found to be in violation of the CPPA.

C. An Order requiring KHC to provide corrective advertising to the residents of the District of Columbia that restores consumers.

D. An Order requiring KHC to pay statutory civil penalties in an amount to be determined at trial, pursuant to D.C. Code §28-3909(b), for each and every violation of the CPPA;

E. An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

F. Punitive damages and any such further relief as this Court may deem just and proper.

### Jury Trial Demanded

Plaintiff Clean Label Project hereby demands a trial by jury.

Dated: 8/28/2020

Respectfully submitted,

/s/ Travis Pittman

Travis Pittman (D.C. Bar No. 1016894)
Local Counsel for Plaintiff

Holmes Pittman & Haraguchi, LLP
P.O. Box 380
Chester, MD  21619
Phone: (410) 482-9505
Fax: (443) 782-0362
jtpittman@hphattorneys.com

Kristen M. Ross, Esq. (MD Bar No. 0712120212)
Davitt, Lalley, Dey & McHale, PC
1971 Beltline Ave., Suite 106
Grand Rapids, MI 49525
Tel: (202) 750-0355
kristen.ross@dldmlaw.com

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

CLEAN LABEL PROJECT FOUNDATION   Case Number: __**2020 CA 003806 B**__

vs                           Date: <u>8/28/2020</u>

<u>THE KRAFT HEINZ COMPANY</u>   ☐ One of the defendants is being sued
                                     in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>J. Travis Pittman | Relationship to Lawsuit |
| Firm Name:<br>Holmes Pittman & Haraguchi, LLP | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>(202) 329-3558          1016894 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury      ☐ 6 Person Jury      ☒ 12 Person Jury

Demand: $_____   Other: __<u>Declaratory Judgment</u>__

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: __<u>N/A</u>_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

**NATURE OF SUIT:**      *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

---

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

---

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud | Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☒ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

## II.

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
   Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

## D.  REAL PROPERTY

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

/s/ Travis Pittman
_____

Attorney's Signature

8/28/2020
_____

Date

CV-496/ June 2015

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| Plaintiff, | * | |
| v. | * | FILED WITH COMPLAINT |
| THE KRAFT HEINZ COMPANY | * | **2020 CA 003806 B** |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**<u>VERIFICATION</u>**

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read the foregoing Complaint and know its contents; and that the facts stated therein are true to the best of my knowledge, information, and belief.

_____
8/28/20
Date

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

CLEAN LABEL PROJECT FOUNDATION
_____
Plaintiff

vs.

Case Number **2020 CA 003806 B**

THE KRAFT HEINZ COMPANY
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

J. Travis Pittman
_____
Name of Plaintiff's Attorney

P.O. Box 380, Chester, MD 21619
_____
Address

(202) 329-3558
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date **08/31/2020**

如需翻译，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

CLEAN LABEL PROJECT FOUNDATION
_____
Demandante

contra

Número de Caso: __**2020 CA 003806 B**__

THE KRAFT HEINZ COMPANY
_____
Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

J. Travis Pittman
_____
Nombre del abogado del Demandante

P.O. Box 380, Chester, MD  21619
_____
Dirección

_____

(202) 329-3558
_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
Subsecretario

Fecha: **08/31/2020**

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

CLEAN LABEL PROJECT FOUNDATION
    Vs.                                    C.A. No.      2020 CA 003806 B
THE KRAFT HEINZ COMPANY

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                         Chief Judge Robert E. Morin

Case Assigned to: Judge FERN FLANAGAN SADDLER
Date:  August 31, 2020
Initial Conference: 9:30 am, Friday, December 11, 2020
Location:    Courtroom 100
               500 Indiana Avenue N.W.
               WASHINGTON, DC 20001

                                                          CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch.  The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

CAIO-60