# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

CLEAN LABEL PROJECT FOUNDATION,

     Plaintiff,

v.

THE KRAFT HEINZ COMPANY,

     Defendant.

Case No. 1:20-cv-2964-CJN

The Honorable Carl J. Nichols

# THE KRAFT HEINZ COMPANY'S
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Previn Warren (D.C. Bar No. 1022447)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Ste. 900
Washington, DC 20001
(202) 637-6361
pwarren@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

RELEVANT BACKGROUND ................................................................................. 3

ARGUMENT ............................................................................................................ 5

I.     This Case Is A "Class Action" Under D.C. Law And Is Removable Under CAFA .................................................................................................... 5

     A.     This case is a "class action" because D.C. law requires a representative action seeking monetary relief to be brought as a class action ............................................................................... 6

     B.     This case is a "class action" because section 28-3905(k)(1)(D) of the D.C. Code expressly authorizes this case to be brought on behalf of a class of consumers ........................... 10

     C.     Plaintiff's reliance on CAFA's "mass action" provision is a red herring ............................................................................... 15

II.     This Case Satisfies CAFA's Remaining Requirements Because There Are Over 100 Putative Class Members, The Parties Are Minimally Diverse, And There Is Over $5 Million In Controversy ................. 15

     A.     The parties are minimally diverse ......................................................... 16

     B.     The putative class is sufficiently numerous to satisfy CAFA .............. 16

     C.     There is over $5 million in controversy ................................................ 17

III.     Alternatively, This Case Is Removable Under 28 U.S.C. § 1332(a) ............... 22

CONCLUSION ....................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna U.S. Healthcare, Inc. v. Hoechst AG*,
    48 F. Supp. 2d 37 (D.D.C. 1999) ............................................................................22

*Alston v. Whole Foods Mkt. Grp.*,
    No. 17-2580, 2018 WL 2561041 (D.D.C. Apr. 13, 2018) ........................................8

*Animal Legal Defense Fund v. Hormel Foods Corp.*,
    249 F. Supp. 3d 53 (D.D.C. 2017) ......................................................................9, 13

*Azar v. Allina Health Servs.*,
    139 S. Ct. 1804 (2019) ............................................................................................10

*Barnes v. District of Columbia*,
    42 F. Supp. 3d 111 (D.D.C. 2014) ..........................................................................11

*Beck v. Test Masters Educ. Servs., Inc.*,
    73 F. Supp. 3d 12 (D.D.C. 2014) ............................................................................21

*Bradford v. George Washington Univ.*,
    249 F. Supp. 3d 325 (D.D.C. 2017) ......................................................................5, 21

*Breakman v. AOL LLC*,
    545 F. Supp. 2d 96 (D.D.C. 2008) .........................................................................7, 13

*Brown v. Mortg. Elec. Registration Sys., Inc.*,
    738 F.3d 926 (8th Cir. 2013) ..................................................................................12

*In re Cardizem CD Antitrust Litig.*,
    90 F. Supp. 2d 819 (E.D. Mich. 1999) ...................................................................23

*Coll. of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins. Co.*,
    585 F.3d 33 (1st Cir. 2009) .....................................................................................12

*Comm. for G.I. Rights v. Callaway*,
    518 F.2d 466 (D.C. Cir. 1975) ...........................................................................17, 18

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014) ................................................................................................5, 22

*In re Executive Office of the President*,
    215 F.3d 20 (D.C. Cir. 2000) ...................................................................................7

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)....................................................................................................12

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017)..........................................................................................12

*Fahey v. Godiva Chocolatier, Inc.*,
  No. 19-2128, 2020 WL 805776 (D.D.C. Feb. 18, 2020).........................................19

*Fefferman v. Dr. Pepper Snapple Grp., Inc.*,
  No. 13-160, 2013 WL 12114486 (S.D. Cal. Mar. 12, 2013)...................................20

*Ford v. Chartone, Inc.*,
  908 A.2d 72 (D.C. 2006)............................................................................................14

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019).....................................................................................19

*Greene v. Harley-Davidson, Inc.*,
  965 F.3d 767 (9th Cir. 2020).....................................................................................17

*Hartigh v. Latin*,
  485 F.2d 1068 (D.C. Cir. 1973).................................................................................21

*Hoffman v. Vulcan Materials Co.*,
  19 F. Supp. 2d 475 (M.D.N.C. 1998)........................................................................23

*Horn v. U.S. Dep't of Army*,
  284 F. Supp. 2d 1 (D.D.C. 2003).................................................................................8

*Johnson v. District of Columbia*,
  850 F. Supp. 2d 74 (D.D.C. 2012)...............................................................................7

*Lavelle v. State Farm Mut. Auto Ins. Co.*,
  235 F. Supp. 3d 217 (D.D.C. 2017)...........................................................................17

*McQueen v. Woodstream Corp.*,
  672 F. Supp. 2d 84 (D.D.C. 2009).............................................................................21

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
  571 U.S. 161 (2014)...................................................................................................15

*Modern Mgmt. Co. v. Wilson*,
  997 A.2d 37 (D.C. 2010)............................................................................................21

*Nat'l Welfare Rights Org. v. Weinberger*,
  377 F. Supp. 861 (D.D.C. 1974)................................................................................22

*Nat'l Consumers League v. Flowers Bakeries, LLC*,
36 F. Supp. 3d 26 (D.D.C. 2014) ...........................................................................12

*Nat'l Consumers League v. Gen. Mills, Inc.*,
680 F. Supp. 2d 132 (D.D.C. 2010) ....................................................................6, 13

*Organic Consumers Ass'n v. Gen. Mills, Inc.*,
No. 16-6309, 2017 WL 2901210 (D.C. Super. Ct. Apr. 27, 2017)............................9

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006) ................................................................................18

*Paleteria La Michoacana, Inc. v. Productos Lacetos Tocumbo S.A. De C.V.*,
79 F. Supp. 3d 60 (D.D.C. 2015) .............................................................................9

*Raskas v. Johnson & Johnson*,
719 F.3d 884 (8th Cir. 2013) ................................................................................17

*Rotunda v. Marriott Int'l, Inc.*,
123 A.3d 980 (D.C. 2015) .............................................................................. *passim*

*S. Fla. Wellness, Inc. v. Allstate Ins. Co.*,
745 F.3d 1312 (11th Cir. 2014) ............................................................................17

*Samuel v. Wells Fargo Co.*,
311 F. Supp. 3d 10 (D.D.C. 2018).........................................................................16

*Sloan v. Soul Circus, Inc.*,
No. 15-1389, 2015 WL 9272838 (D.D.C. Dec. 18, 2015)...............................19, 21

*Smith v. Washington*,
593 F.2d 1097 (D.C. Cir. 1975) .............................................................................18

*Snyder v. Harris*,
394 U.S. 332 (1969)........................................................................................18, 22

*Std. Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)...............................................................................................18

*Steinberg v. Nationwide Mut. Life Ins. Co.*,
418 F. Supp. 2d 215 (E.D.N.Y. 2006) ...................................................................18

*Synfuel Techs., Inc. v. DHL Express (USA) Inc.*,
463 F.3d 646 (7th Cir. 2006) ................................................................................23

*Tatum v. Laird*,
444 F.2d 947 (D.C. Cir. 1971) ..............................................................................18

*In re U-Haul Int'l, Inc.*,
    No. 08-7122, 2009 WL 902414 (D.C. Cir. Apr. 6, 2009)........................................................8

*United States v. Woods*,
    571 U.S. 31 (2013) ...................................................................................................................10

*Williams v. First Govt' Mortg. & Invr's Corp.*,
    225 F.3d 738 (D.C. Cir. 2000) ................................................................................................21

*Williams v. Martinez*,
    586 F.3d 995 (D.C. Cir. 2009) ..................................................................................................8

*Williams v. Purdue Pharma Co.*,
    No 02-556, 2003 WL 24259557 (D.D.C. Feb. 27, 2003) ......................................................23

*Witte v. Gen. Nutrition Corp.*,
    104 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................................23

*Zahn v. Int'l Paper Co.*,
    414 U.S. 291 (1973) .................................................................................................................18

*Zuckman v. Monster Beverage Corp.*,
    958 F. Supp. 2d 293 (D.D.C. 2013) ...................................................................................6, 13

**Statutes**

28 U.S.C. § 1332 ........................................................................................................... *passim*

28 U.S.C § 1367 ....................................................................................................................12

D.C. Code § 28-3901 .......................................................................................................10, 16

D.C. Code § 28-3905 ..................................................................................................... *passim*

**Other Authorities**

21 C.F.R. § 173.255(c)..............................................................................................................3

D.C. Council Committee on Public Services and Consumer Affairs,
    Report on Bill 19-0581 (Nov. 28, 2012)................................................................................11

D.C. Super. Ct. R. 23 ..................................................................................................... *passim*

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

S. Rep. No. 109-14 (2005) ........................................................................................................6

## INTRODUCTION

The Clean Label Project Foundation ("Plaintiff") has chosen to frame its lawsuit against The Kraft Heinz Company ("Kraft Heinz") in such a way that the case is removable under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). That statute gives this Court original jurisdiction over lawsuits where (i) the parties are minimally diverse, (ii) the amount in controversy exceeds $5 million, (iii) the matter is a "class action," and (iv) there are at least 100 members of the proposed class. 28 U.S.C. § 1332(d)(2), (5)(B). All four requirements are met here.

Plaintiff concedes that the minimal diversity requirement is satisfied here, ECF No. 9 ("Mot."), at 12, and has no credible argument that the putative class does not include over 100 members. *See* Decl. of Greg O'Neil ("O'Neil Decl.") ¶ 2 (noting that over 50,000 units of the product at issue were sold during the relevant class period). Nor can there be any serious dispute that the amount in controversy requirement is satisfied, given Plaintiff's decision to seek not only injunctive relief, but also statutory civil penalties, punitive damages, and attorney's fees from Kraft Heinz. ECF No. 1-1 ("Compl.") at 21 (Prayer for Relief). Plaintiff responds that Kraft Heinz cannot aggregate its potential exposure to satisfy the $5 million threshold, but that is plainly false: the Supreme Court has held that CAFA expressly displaces the traditional non-aggregation rule.

That leaves just the question of whether this lawsuit is a "class action" under CAFA. It is. CAFA defines the term "class action" to include "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute* . . . authorizing an action to be brought by 1 or more representative persons *as a class action*." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). Here, Plaintiff chose to invoke a provision of a "similar State statute"—the D.C. Consumer Protection Procedures Act ("CPPA"), which authorizes a "public interest organization" like Plaintiff to sue "on behalf of the interest of a . . . *class of consumers*." D.C. Code § 28-

3905(k)(1)(D)(i) (emphasis added); *see also* Compl. ¶¶ 45, 108–09.  Given the clear satisfaction of CAFA's requirements, Plaintiff's motion to remand has no merit and should be denied.

Plaintiff argues that this case is not removable because the CPPA is a "separate and distinct procedural vehicle from a class action."  Mot. at 5.  Perhaps that is true of *some* provisions of the CPPA, and perhaps it is even true of some CPPA provisions cited in the Complaint.  That does not change the outcome.  Plaintiff—as the master of its complaint—has sued under a provision of the CPPA that expressly permits it to pursue relief on behalf of a "class of consumers."  *See* D.C. Code § 28-3905(k)(1)(D); Compl. ¶¶ 108–112.  That renders this a "class action" under CAFA and confers original jurisdiction on this Court.

Even if one ignored Plaintiff's choice to bring this lawsuit under section 28-3905(k)(1)(D), the D.C. Court of Appeals has made clear that *any* representative action seeking damages on behalf of other consumers under the CPPA "is in essence a class action, whether pled as such or not." *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 982 (D.C. 2015).  In other words, it doesn't even matter whether Plaintiff is bringing this lawsuit as a "class action," or as a "representative action" on behalf of the "general public" as Plaintiff contends.  Mot. at 4–5.  Regardless, D.C. law makes clear that *any* representative action seeking damages *is* a class action subject to D.C.'s version of Rule 23, making this case removable under CAFA.  Plaintiff claims that courts in this District have held to the contrary, but those cases are distinguishable, as they either pre-date *Rotunda* or relate to CPPA lawsuits that did not seek damages at all.

Finally, even if this Court concluded that this case is not a "class action," the case would still be removable under 28 U.S.C. § 1332.  If Plaintiff is correct that it is not suing on behalf of a class of consumers, the necessary implication is that Plaintiff is asserting a single claim on behalf of the "general public."  If that is the case, the remedies Plaintiff seeks in this action represent a

common and undivided recovery on behalf of the general public with a value that greatly exceeds $75,000.  In other words, Plaintiff cannot have it both ways: it cannot claim that this case is not a "class action," on the one hand, and then use the number of members of the "general public" to defeat diversity jurisdiction on the other hand.  The non-aggregation principle does not apply here, and this Court should deny Plaintiff's motion to remand.

## RELEVANT BACKGROUND

Kraft Heinz manufactures its signature Maxwell House coffee, which it sells in the District of Columbia and across the country, in both caffeinated and decaffeinated varieties.  Among other sizes, Kraft Heinz sells a 29.3-ounce container of Maxwell House Original Roast decaffeinated coffee (the "Product").  In the past three years, it has sold over 50,000 canisters of the Product in the D.C. metropolitan area.  *See* O'Neil Decl. ¶ 2.

Plaintiff alleges that Kraft Heinz, like many coffee manufacturers, uses the solvent methylene chloride in the process of decaffeinating its coffee.  The minuscule amount of methylene chloride residue Plaintiff contends it detected in the Product—approximately 50 parts per billion (*see* Compl. ¶ 81)—is approximately 0.5% of the amount of methylene chloride residue the FDA permits in decaffeinated coffee.  *See generally* 21 C.F.R. § 173.255(c).  Plaintiff nonetheless alleges that the presence of methylene chloride renders the Product "adulterated."  Compl. ¶¶ 17, 21.  Plaintiff also alleges that the presence of methylene chloride renders what Plaintiff deems Kraft Heinz's supposed "claims of purity"—including an alleged claim that the Product consists of "100% Arabica and Robusta Coffee Beans"—"false, deceptive, and misleading."  *Id.* ¶ 16.

Plaintiff brought this lawsuit in D.C. Superior Court, alleging that Kraft Heinz's marketing and sale of the Product violates the CPPA.[1]  *See* Compl. ¶¶ 29, 91–113.  In its complaint, Plaintiff purported to sue under two separate provisions of the CPPA.  First, Plaintiff purported to assert claims under section 28-3905(k)(1)(C), which permits a "nonprofit organization . . . on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, [to] bring an action seeking relief from the use of a trade practice in violation of a law of the District."  D.C. Code § 28-3905(k)(1)(C); *see also* Compl. ¶¶ 45, 106–07 (referencing this provision).  Second, Plaintiff purported to assert claims under section 28-3905(k)(1)(D), which provides that a "public interest organization may, on behalf of the interest of a consumer or a *class of consumers*, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District."  D.C. Code § 28-3905(k)(1)(D)(i) (emphasis added); *see also* Compl. ¶¶ 45, 108–09 (referencing this provision).

In its complaint, Plaintiff seeks a variety of remedies under the CPPA.  In addition to a declaration that Kraft Heinz's conduct violates the CPPA, Plaintiff also seeks an order "enjoining [Kraft Heinz's] conduct found to be in violation of the CPPA" and "requiring [Kraft Heinz] to provide corrective advertising to the residents of the District of Columbia."  *Id.* at 21 (Prayer for Relief).  Plaintiff also seeks various forms of monetary relief, including "statutory civil penalties," punitive damages, and attorney's fees.  *See id.*

---

[1]  Plaintiff has brought several other cases in the District of Columbia challenging other manufacturers' use of methylene chloride to decaffeinate coffee.  *See, e.g.*, *Clean Label Project Found. v. Rowland Coffee Roasters, Inc., et al.*, Case No. 20-2311 (D.D.C.); *Clean Label Project Found. v. Keurig Green Mtn. Inc.*, Case No. 20 CA 3566 B (D.C. Super. Ct.).

Plaintiff served its complaint on Kraft Heinz on September 16, 2020, and Kraft Heinz timely removed to this Court on October 15, 2020.  *See* ECF No. 1.  Plaintiff now moves to remand this case to D.C. Superior Court.

## ARGUMENT

With narrow exceptions, CAFA provides federal courts with subject matter jurisdiction over any "class action" in which at least one member of the putative class is diverse from any defendant, the putative class includes at least 100 individuals, and there is at least $5,000,000 in controversy.[2]  *See generally* 28 U.S.C. § 1332(d).  "[N]o antiremoval presumption attends cases involving CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *accord Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 331 (D.D.C. 2017) (distinguishing cases directing courts to construe federal jurisdiction narrowly and holding that they are not applicable to cases removed under CAFA).  This lawsuit satisfies all of CAFA's requirements: it is a class action with over 100 putative class members, the parties are minimally diverse, and Plaintiff's requests for monetary and injunctive relief place well over $5 million in controversy.

I.      **This Case Is A "Class Action" Under D.C. Law And Is Removable Under CAFA.**

Plaintiff claims that this case belongs in D.C. Superior Court because it "has not filed a class action suit under Rule 23 of the Federal Rules of Civil Procedure."  Mot. at 3.  But CAFA does not require that the plaintiff bring its lawsuit under that federal rule.  Indeed, if that were the case, no lawsuit filed in state court under state procedural rules would be removable under CAFA.

---

[2] CAFA's "home state" and "local controversy" exceptions, codified in 28 U.S.C. § 1332(d)(4), do not apply here because Kraft Heinz, the only defendant in this case, is not a citizen of the District of Columbia.  Plaintiff does not contend otherwise.

Instead, CAFA defines a class action to include "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute or rule of judicial procedure* authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added).  As the Senate Judiciary Committee noted when Congress drafted CAFA, "the definition of 'class action' is to be interpreted liberally" and "should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority."  S. Rep. No. 109-14, at 35 (2005).  Instead, "lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions."  *Id.*  Viewed through that lens, this case is a "class action" for two separate reasons.

### A.    This case is a "class action" because D.C. law requires a representative action seeking monetary relief to be brought as a class action.

Under D.C. law, *any* representative action seeking damages under the CPPA must proceed "within the Rule 23 framework."  *Rotunda*, 123 A.3d at 989.  That is true whether a complaint proceeds under the auspices of section 28-3905(k)(1)(D), which authorizes a "public interest organization" to bring a lawsuit "on behalf of the interest of a consumer or a class of consumers," or under section 28-3905(k)(1)(C), which authorizes a "nonprofit organization" to bring a representative action on behalf of the "general public."  D.C. Code § 28-3905(k)(1)(C), (D)(i). And it remains true where, as here, a complaint invokes both provisions of the CPPA.  *See* Compl. ¶¶ 106-09.  Because this lawsuit is subject to the provisions of D.C. Superior Court Civil Rule 23, it has been "filed under rule 23 of the Federal Rules . . . or similar State statute or rule of judicial procedure."  28 U.S.C. § 1332(d)(1)(B).  It is therefore a "class action" as defined by CAFA.

Plaintiff relies on a series of cases from this District—including *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013), *National Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132 (D.D.C. 2010) ("*General Mills*"), and *Breakman v. AOL LLC*, 545

F. Supp. 2d 96 (D.D.C. 2008)—to argue that a representative action under the CPPA is a "separate and distinct procedural vehicle" from a class action.[3]  Mot. at 4–5.  But these cases no longer offer a valid interpretation of D.C. law, in light of the D.C. Court of Appeals' subsequent decision in *Rotunda*.  That case makes clear that any representative action seeking monetary relief under the CPPA is subject to D.C. Superior Court Civil Rule 23.

In *Rotunda*, the plaintiff brought CPPA claims for damages on behalf of himself and the "general public," but disclaimed "any intention to seek class certification" under Superior Court Rule 23.  123 A.3d at 982.  The Superior Court dismissed the "representative portion" of the plaintiff's CPPA claims "on behalf of the general public" because the plaintiff "did not seek class certification under Superior Court Rule of Civil Procedure 23."  *Id.*  In reaching this conclusion, the Superior Court reasoned that a CPPA claim "brought by an individual on behalf of himself and other similarly situated members of the general public is *in essence a class action*, whether pled as such or not, and must satisfy the requirements of Rule 23."  *Id.* (emphasis added).

The D.C. Court of Appeals affirmed.  It held that there was "no unambiguous evidence, in the 2000 amendments or the supporting legislative history, that the Council meant to displace the Rule 23 framework in favor of improvised due process and management devices for a whole sub-set of representative actions."  *Id.* at 988.  It likewise emphasized that there was no evidence that the D.C. Council sought to have "repealed [Superior Court Civil Rule 23's] application to

---

[3] Plaintiff argues that Kraft Heinz's position is "directly contrary to this Court's own case law" and that "[t]here is no reason the Court should now overturn its previous decisions."  Mot. at 2.  But "District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the law of the district."  *In re Executive Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000); *see also Johnson v. District of Columbia*, 850 F. Supp. 2d 74, 79 (D.D.C. 2012) ("A District Court is comprised of individual judges who reach decisions that are not binding on anyone else.").  And that is particularly true here, as the opinions Plaintiff cites are either distinguishable or no longer good law in light of *Rotunda*.

representative suits under the CPPA." *Id.*  Instead, it concluded that "the necessary vehicle for suits seeking class-wide damages"—including those under the CPPA—"remains Rule 23." *Id.* at 989.

Rotunda makes clear that a representative action under the CPPA for damages—whether styled as a "class action" or as a suit on behalf of the "general public"—is subject to D.C. Superior Court Rule 23.  *See Alston v. Whole Foods Mkt. Grp.*, No. 17-2580, 2018 WL 2561041, at *1 (D.D.C. Apr. 13, 2018) (recognizing *Rotunda* as holding that "Federal Rule of Civil Procedure 23 applies to DCCPPA actions under D.C. law.").  As a decision of D.C.'s highest court on an issue of District law, *Rotunda* is controlling and entitled to deference, notwithstanding earlier, contrary precedent from this Court.  *See, e.g.*, *Williams v. Martinez*, 586 F.3d 995, 1001 (D.C. Cir. 2009) ("[O]n questions of District of Columbia law, this court defers to the D.C. Court of Appeals."); *In re U-Haul Int'l, Inc.*, No. 08-7122, 2009 WL 902414, at *1 (D.C. Cir. Apr. 6, 2009) ("[T]he local courts should determine how this action, purported to be a non-class representative action, should proceed.").

Recognizing that the majority of its cited cases pre-date *Rotunda* and are no longer good law, Plaintiff argues that *Rotunda* is distinguishable because it "dealt specifically with an action for damages" and that "seeking injunctive relief on behalf of the general public does not implicate the class action framework."[4]  Mot. at 5.  But this does not distinguish *Rotunda*, given that Plaintiff

---

[4] Oddly, Plaintiff claims that this Court is "bound" under the "law of the case" doctrine to confine *Rotunda* to lawsuits seeking monetary relief on behalf of the general public.  Mot. at 6.  Leaving aside the fact that this *is* a lawsuit seeking monetary relief on behalf of the general public, the "law of the case" doctrine—which concerns the binding effect of an earlier decision in the *same proceeding*—has nothing to do with whether a decision in *another* case is binding here.  *See Horn v. U.S. Dep't of Army*, 284 F. Supp. 2d 1, 7 (D.D.C. 2003) ("[T]he law of the case doctrine . . . provides that the *same* issue presented a second time in the *same* case in the *same* court should lead to the *same* result.") (emphasis in original) (citation and internal quotation marks omitted).

*also* seeks monetary relief on behalf of the class.  For example, Plaintiff seeks "statutory civil penalties."  *See* Compl. at 21 (Prayer for Relief).  Under D.C. law, those statutory civil penalties— which amount to $1,500 per violation—are "payable to the consumer" and thereby constitute a form of monetary relief for the class.  D.C. Code § 28-3905(k)(2)(A)(i).  Similarly, Plaintiff seeks punitive damages, which are a quintessential form of monetary relief.  *See* Compl. at 21 (Prayer for Relief); *see also Paleteria La Michoacana, Inc. v. Productos Lacetos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 72 (D.D.C. 2015) (describing punitive damages as a "form of monetary relief"). It is simply inaccurate to claim that this lawsuit is not an "action for damages."

Plaintiff's reliance on *Animal Legal Defense Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53 (D.D.C. 2017), is misplaced for the same reason.  In that case, the defendant acknowledged that the plaintiff sought only injunctive relief, but nonetheless "invite[d] the Court to extend the *Rotunda* decision to such suits."  *Id.* at 65.  The court declined to do so, reasoning that the "concerns raised by . . . *Rotunda* related to suits for damages, not for the type of injunctive relief sought here."[5]  *Id.* at 64–65.  Whether or not that distinction is valid, it is irrelevant: Plaintiff's lawsuit seeks monetary relief, which means that *Rotunda* controls.

The D.C. Court of Appeals could not have been clearer in *Rotunda*: when a plaintiff files a representative action on behalf of the general public and seeks monetary relief, that action must proceed "within the Rule 23 framework."  123 A.3d at 989.  As such, even if Plaintiff were correct that this lawsuit is a "representative action" on behalf of the "general public"—which it is not, for the reasons discussed below—that is not sufficient to defeat removal.

---

[5] Notably, *Animal Legal Defense Fund*'s distinction between suits for injunctive relief and suits for damages has been described as "debatable" by one D.C. court.  *Organic Consumers Ass'n v. Gen. Mills, Inc.*, No. 16-6309, 2017 WL 2901210, at *4 (D.C. Super. Ct. Apr. 27, 2017).

**B.      This case is a "class action" because section 28-3905(k)(1)(D) of the D.C. Code expressly authorizes this case to be brought on behalf of a class of consumers.**

As noted above, CAFA permits removal to federal district court in circumstances where a plaintiff relies on a "State statute . . . authorizing an action to be brought . . . as a class action." *See* 28 U.S.C. § 1332(d)(1)(B). D.C. Code § 28-3905(k)(1)(D)—which Plaintiff repeatedly invokes— is exactly such a statute. *See* Compl. ¶¶ 45, 108–09. It provides that a "public interest organization may, on behalf of the interest of a consumer or a class of consumers, bring an action seeking relief" under the CPPA. D.C. Code § 28-3905(k)(1)(D)(i). This language is unambiguous: it authorizes Plaintiff to sue on behalf of a "class of consumers." Plaintiff's invocation of this provision renders this lawsuit a "class action" under CAFA. Plaintiff's efforts to fight the text of the CPPA and CAFA fail.

*First*, Plaintiff contends that the "plain language" of the CPPA suggests that this lawsuit is not a "class action." Mot. at 10. But Plaintiff pays short shrift to the text of the CPPA in support of this argument.[6] Instead, Plaintiff relies principally on the CPPA's "legislative history," including the D.C. Council's supposed "rationale" for amending the statute. But as the Supreme Court has made clear, "legislative history . . . need[s] not be consulted when, as here, the statutory text is unambiguous." *United States v. Woods*, 571 U.S. 31, 46 n.5 (2013); *see also Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019) (noting that legislative history "can't overcome a

---

[6] Plaintiff argues in passing that the CPPA states that it "shall be construed and applied liberally to promote its purpose." Mot. at 10 (citing D.C. Code § 28-3901(c)). Nothing about this broad statement of legislative purpose has any bearing on whether section 28-3905(k)(1)(D) authorizes Plaintiff to bring this lawsuit as a class action. If anything, a "liberal" reading of the statute would suggest that it permits a plaintiff to bring a claim either as a class action or as a private attorney general on behalf of the general public—which is consistent with the fact that it includes two separate provisions authorizing these two separate types of lawsuits.

statute's clear text and structure").  The CPPA authorizes actions "on behalf of . . . a class of consumers."  D.C. Code 28-3905(k)(1)(D).  Nothing about its legislative history changes that text.

Just as importantly, Plaintiff's reading of the legislative history is misleadingly incomplete. Plaintiff cites legislative history from 2000.  But that is over a decade *before* the D.C. Council enacted section 28-3905(k)(1)(D) and unsurprisingly does little to illuminate the purpose of that addition.  Notably, the November 2012 Committee Report for Bill 19-0581—the 2012 statute that added section 28-3905(k)(1)(D)—specifically differentiates actions brought by a plaintiff "as the representative of a class of consumers," as opposed to actions brought "individually," "jointly with other consumers," or "as a private attorney general on behalf of the general public."  D.C. Council Committee on Public Services and Consumer Affairs, Report on Bill 19-0581, at 4 (Nov. 28, 2012).  In other words, the D.C. Council took specific action to permit a "public interest organization" to bring a CPPA action as a "representative of a class of consumers," authority that did not exist prior to the enactment of section 28-3905(k)(1)(D).  *See id.* at 6 (discussing "[n]ew subsection (k)(1)(D)").

*Second*, Plaintiff tries to sidestep the effect of section 28-3905(k)(1)(D) by arguing that it brought this case as a "representative action" on behalf of the "general public" under section 28-3905(k)(1)(C).  For reasons already discussed, this argument is thoroughly discredited by *Rotunda*. *See supra* at 6–9.  In any event, if Plaintiff had wanted to bring this lawsuit solely on behalf of the "general public," D.C. Code § 28-3905(k)(1)(C), it should not have invoked a provision authorizing it to sue on behalf of a "class of consumers."  Plaintiff is the "master of [its] complaint" and "should have recognized that [Kraft Heinz] could exercise its statutory right of removal" based on Plaintiff's express reliance on section 28-3905(k)(1)(D) of the CCPA.  *Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 120 (D.D.C. 2014).

This principle follows by analogy from precedent in other areas of civil procedure. Consider, for example, supplemental jurisdiction. It is well established that, if a "court has original jurisdiction over a single claim in the complaint," an action is properly removable to federal court, and "[t]he presence of other claims in the complaint, over which the district court may lack original jurisdiction, is of no moment." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 550 (2005). That is equally true in the CAFA context. For example, the First Circuit has agreed that removal under CAFA is proper where "the complaint contains class-type allegations sufficient to come within CAFA's scope"—even if the complaint contains a "multiplicity of claims . . . some [of which] may not be susceptible to class action treatment." *Coll. of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 40–41 (1st Cir. 2009). Other courts have similarly held that, when CAFA acts as the "jurisdictional anchor," the court may exercise supplemental jurisdiction over any non-class claims under 28 U.S.C § 1367. *F5 Capital v. Pappas*, 856 F.3d 61, 81 (2d Cir. 2017); *see also, e.g., Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 933-34 (8th Cir. 2013) (holding that district court properly exercised CAFA jurisdiction over one claim brought under state law analogous to Rule 23 and supplemental jurisdiction over the plaintiff's remaining claims). The same is true here.[7]

In short, because Plaintiff claims to sue Kraft Heinz on behalf of a "class of consumers," it has invoked a "State statute . . . authorizing an action to be brought . . . as a class action." *See* 28

---

[7] Plaintiff argues that this result is inconsistent with *National Consumers League v. Flowers Bakeries, LLC*, in which the court held that a CPPA complaint that "relies on all four private attorney general standing provisions, not just subsection (D)" was not a "class action" under CAFA. 36 F. Supp. 3d 26, 35 (D.D.C. 2014); *see also* Mot. at 7-8. Like other decisions cited by Plaintiff, *Flowers Bakeries* also pre-dates *Rotunda* and, as such, does not consider the D.C. Court of Appeals' clear holding that actions under subsection (D) are subject to D.C. Superior Court Rule 23. *Rotunda*, 123 A.3d at 985-86.

U.S.C. § 1332(d)(1)(B).  That remains the case even if Plaintiff also purports to sue on another basis and in a separate capacity.

*Third,* Plaintiff places great reliance on *Breakman*, *Zuckman*, *General Mills*, and *Animal Legal Defense Fund*.  But there is no indication that any of the plaintiffs in those lawsuits brought their actions under section 28-3905(k)(1)(D); in fact, those decisions do not even *cite* section 28-3905(k)(1)(D).[8]  For example, in *Animal Legal Defense Fund*, the plaintiff "invoke[d] D.C. Code § 28-3905(k)(1)(C)," but there was no evidence that it simultaneously relied on section 28-3905(k)(1)(D), as Plaintiff does here.  *See id.* at 61.  These cases therefore shed no light on whether section 28-3905(k)(1)(D) authorizes a case to be brought on behalf of a "class of consumers"—*i.e.*, as a "class action."  *See* 28 U.S.C. § 1332(d)(1)(B).

Plaintiff relies on *Zuckman* to argue that the "dispositive question" is "how the action was actually filed."  Mot. at 4 (alteration and internal quotation marks omitted).  But the complaint in *Zuckman* did not cite section 28-3905(k)(1)(D) and was filed before the D.C. Council enacted that provision.  *See infra* at 13 n.8.  Here, in contrast, Plaintiff expressly invoked section 28-3905(k)(1)(D) in its complaint, which means that this case was "filed under" a statute that authorizes this case to be brought by a "representative person[]" as a "class action."  28 U.S.C. § 1332(d)(1)(B).

---

[8] Notably, *Breakman* and *General Mills* pre-date the enactment of section 28-3905(k)(1)(D) in 2012.  Although *Zuckman* was decided in 2013, the complaint in that case was filed on November 13, 2012—before the D.C. Council enacted section 28-3905(k)(1)(D)—and does not cite that provision.  *See* ECF No. 1-1, *Zuckman v. Monster Energy Corp.*, Case No. 12-1978 (D.D.C.).  And the plaintiff in *Animal Legal Defense Fund* likewise did not cite section 28-3905(k)(1)(D) or seek monetary relief; instead, it relied solely on section 28-3905(k)(1)(C) and did not seek damages or statutory penalties.  *See* ECF No. 1-1, *Animal Legal Defense Fund v. Hormel Foods Corp.*, Case No. 16-1575 (D.D.C.).

*Fourth,* Plaintiff argues that section 28-3905(k)(1)(D) is not "similar" to Federal Rule of Civil Procedure 23 because it does not include all of the "hallmarks of Rule 23 class actions." Mot. at 8.  But D.C. courts have long applied D.C. Superior Court Rule 23 to class actions brought by individual consumers under the CPPA.  *See generally Ford v. Chartone, Inc.*, 908 A.2d 72, 28 (D.C. 2006).  When the D.C. Council decided to permit a "public interest organization" to bring a lawsuit on behalf of a "class of consumers" in 2012, it presumably contemplated that any such action would likewise be subject to D.C. Superior Court Rule 23.  *See generally Rotunda*, 123 A.3d at 982 (noting that the D.C. Council "is presumed to legislate with knowledge of the applicable Civil Rules") (internal quotation marks omitted).

If there were any doubt about whether representative actions under the CPPA are subject to D.C. Superior Court Rule 23, *Rotunda* eliminated it.  *Rotunda* expressly held that, absent the "detailed structures regulating class actions like those in Rule 23, a procedure binding absent class members who do not affirmatively distance themselves from the suit would pose grave due process concerns."  *Id.* at 985.  It specifically rejected the plaintiff's argument that courts faced with representative suits "can improvise procedures" and "regulate CPPA actions on behalf of 'the general public' outside Rule 23's framework."  *Id.* at 985–86.  Absent "unambiguous[]" evidence that the D.C. Council "abrogated or repealed the rule's application to representative suits under the CPPA," *Rotunda* concluded that any such suit must proceed "*within* the framework of Rule 23."  *Id.* at 988–89 (emphasis in original).

Thus, whether this case were to proceed in D.C. Superior Court or federal court, it would be subject to Rule 23(a)'s requirements of commonality, typicality, adequacy, and numerosity, as well as the corresponding requirements of Rule 23(b).  *Compare* D.C. Super. Ct. R. 23 *with* Fed. R. Civ. P. 23.  Whether those requirements flow from D.C. Superior Court Rule 23 or section 28-

3905(k)(1)(D) is a distinction without a difference.  Because this lawsuit is subject to the same procedural requirements imposed by Federal Rule of Civil Procedure 23, it is "in essence a class action" and is removable under CAFA.  *Rotunda*, 123 A.3d at 982.

In short, even if this Court were to conclude that not *all* representative actions under the CPPA are "class actions," Plaintiff has sued Kraft Heinz under a provision that expressly authorizes it to bring an action on behalf of a "class of consumers."  D.C. Code § 28-3905(k)(1)(D).  That is plainly sufficient to render this case removable under CAFA.

### C.      Plaintiff's reliance on CAFA's "mass action" provision is a red herring.

Finally, Plaintiff argues that "CAFA carves out an exception for private attorney general suits" and provides that such suits are not removable if "all of the claims in the action are asserted on behalf of the general public."  Mot. at 9 (citing 28 U.S.C. § 1332(d)(11)) (internal quotation marks omitted).  But the provision Plaintiff cites deals with "mass actions"—*i.e.*, cases in which the claims of 100 or more named plaintiffs are proposed to be tried jointly."  28 U.S.C. § 1332(d)(11)(B)(i).  The Supreme Court has made clear that class actions and mass actions are "two types of cases" that are governed by different portions of CAFA.  *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014).  So long as this case constitutes a "class action" under CAFA (which it does), the question of whether this case *also* constitutes a "mass action" under CAFA simply has no bearing on whether removal is proper.

### II.     This Case Satisfies CAFA's Remaining Requirements Because There Are Over 100 Putative Class Members, The Parties Are Minimally Diverse, And There Is Over $5 Million In Controversy.

Although Plaintiff argues at length that this case is not a "class action" under CAFA, it does not meaningfully dispute that this case satisfies CAFA's minimal diversity, numerosity, and amount-in-controversy requirements.  This case readily satisfies all three standards.

**A.      The parties are minimally diverse.**

CAFA does not require that the parties be completely diverse; instead, it requires only that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Here, Plaintiff "does not dispute that the parties are diverse." Mot. at 12. That conclusion is underscored by the Complaint, which alleges that Kraft Heinz is a Delaware company headquartered in Pennsylvania[9], while Plaintiff is a Colorado entity that brings this lawsuit on behalf of Maxwell House consumers in the District of Columbia. *See* Compl. at 1. That is more than sufficient to satisfy CAFA's minimal diversity requirement.

**B.      The putative class is sufficiently numerous to satisfy CAFA.**

CAFA also requires that the putative class include at least 100 members. *See* 28 U.S.C. § 1332(d)(5)(B). Although Plaintiff avoids defining the size of the putative class, it purports to bring this lawsuit on behalf of D.C. consumers under the CPPA, which applies to "consumer goods or services that are or would be purchased, leased, or received in the District of Columbia." D.C. Code § 28-3901(c). Accordingly, the size of the putative class is equivalent to the number of consumers in the District of Columbia who purchased the Product within the statute of limitations period (*i.e.*, since August 28, 2017). *See Samuel v. Wells Fargo Co.*, 311 F. Supp. 3d 10, 19–20 & n.11 (D.D.C. 2018) ("Courts apply a three year statute of limitations to CPPA claims.").

Kraft Heinz has access to Nielsen retail scan data, which confirms that over 50,000 units of the Product have been sold in the D.C. metropolitan area since August 28, 2017. *See* O'Neil Decl. ¶ 2. This supports a reasonable inference that over 100 individuals purchased the Product in the District of Columbia during the statute of limitations period, which satisfies CAFA.

---

[9] Although Kraft Heinz is actually co-headquartered in Pittsburgh, Pennsylvania and Chicago, Illinois, that does not alter the fact that the parties are diverse.

**C.      There is over $5 million in controversy.**

Finally, CAFA requires that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  Three key principles apply when assessing the amount in controversy.

*First,* "[a]bsolute certainty as to the amount is not essential; it suffices that there is a present probability that the damages . . . meet the statutory requirement."  *Comm. for G.I. Rights v. Callaway*, 518 F.2d 466, 472 (D.C. Cir. 1975).  Although the D.C. Circuit's decision in *Committee for GI Rights* pre-dates CAFA, this Court and courts around the country have applied the same principle in assessing whether a lawsuit places $5 million in controversy for purposes of CAFA.  *See, e.g.*, *Lavelle v. State Farm Mut. Auto Ins. Co.*, 235 F. Supp. 3d 217, 223 (D.D.C. 2017) ("[C]alculating the amount in controversy for purposes of the [CAFA] is less a prediction of how much the plaintiffs are ultimately likely to recover than it is an estimate of how much will be put at issue during the litigation.") (citation and internal quotation marks omitted); *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (noting that CAFA requires a removing defendant to show only "that it is *reasonably possible* that the potential liability exceeds $5 million"); *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (noting that the amount in controversy is an "estimate of how much will be put at issue in the litigation" and "is not discounted by the chance that the plaintiffs will lose on the merits"); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) ("[W]hen determining the amount in controversy, the question is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are.") (citations and internal quotation marks omitted).

*Second,* CAFA expressly directs that "the claims of the individual class members *shall be aggregated* to determine whether the matter in controversy exceeds the sum or value of

$5,000,000." 28 U.S.C. § 1332(d)(6) (emphasis added).  In other words, this Court must "add[] up the value of the claim of each person who falls within the definition of the proposed class" to determine the amount in controversy.  *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Plaintiff argues that, "[e]ven under a class action analysis, [t]he separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." Mot. at 12 (internal quotation marks omitted) (citing *Snyder v. Harris*, 394 U.S. 332 (1969) and *Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973)).  But Plaintiff's reliance on pre-CAFA cases is misplaced, as "CAFA eliminates the general rule of non-aggregation for purposes of determining the amount in controversy."  *Steinberg v. Nationwide Mut. Life Ins. Co.*, 418 F. Supp. 2d 215, 218 (E.D.N.Y. 2006); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 n.2y (7th Cir. 2006) (noting that CAFA "did away with the nonaggregation rule").

*Third,* "the test for determining the amount in controversy is the pecuniary result to *either party* which the judgment would directly produce."  *Tatum v. Laird*, 444 F.2d 947, 951 n.6 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972); *see also, e.g.*, *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1975) ("[A] court may look to either the value of the right that plaintiff seeks to enforce or the cost to the defendants to remedy the alleged denial.") (citation and internal quotation marks omitted); *Comm. for GI Rights*, 518 F.2d at 472 (same).  So long as the aggregate cost to Kraft Heinz of paying any damages award and complying with any injunctive relief conceivably exceeds $5 million, this case satisfies CAFA's amount-in-controversy requirement.

Here, Plaintiff seeks a variety of remedies, including an "Order enjoining [Kraft Heinz's] conduct found to be in violation of the CPPA," an "Order requiring [Kraft Heinz] to provide corrective advertising to the residents of the District of Columbia," and an "Order requiring [Kraft Heinz] to pay statutory civil penalties," in addition to attorney's fees and punitive damages.

Compl. at 21 (Prayer for Relief).   These remedies, taken together, place over $5 million in controversy, as explained below:

**Statutory Civil Penalties.**   The CPPA authorizes a plaintiff to recover statutory damages of "$1,500 per violation."   D.C. Code § 28-3905(k)(2)(A)(i); *see also Sloan v. Soul Circus, Inc.*, No. 15-1389, 2015 WL 9272838, at *7 (D.D.C. Dec. 18, 2015).   Many D.C. courts have computed the amount in controversy by multiplying the number of alleged violations (*i.e.*, the number of products sold) by $1,500.   *See, e.g.*, *id.* at *8-9 (noting that "CPPA statutory damages awards flow from a "purchase or receipt of consumer goods and services" and that "each . . . purchase merits one award of $1,500 in statutory damages"); *Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128, 2020 WL 805776, at *5 (D.D.C. Feb. 18, 2020) (calculating statutory damages of "one violation for each individually wrapped candy bar" when the plaintiff allegedly purchased five candy bars).[10]

Kraft Heinz has access to Nielsen retail scan data, which confirms that over 50,000 units of the Product have been sold in the D.C. metropolitan area since September 30, 2017.   *See* O'Neil Decl. ¶ 2.   Assuming Plaintiff prevailed in this case, Plaintiff would seek $1,500 in statutory damages multiplied by the number of units of the Product sold, which amounts to statutory damages of $75,000,000—fifteen times the jurisdictional threshold.   That is sufficient to satisfy CAFA, even without considering the cost of the other remedies Plaintiff seeks.

---

[10] For the avoidance of doubt, Kraft Heinz does not concede that this is the appropriate means of calculating statutory damages, and it maintains that an aggregate award of $75 million in statutory damages based on sales that total well under $1 million is inconsistent with the Due Process Clause.   *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962-63 (8th Cir. 2019) (noting that a "shockingly large" aggregate statutory damages award under the Telephone Consumer Protection Act violated the Due Process Clause).   For present purposes, however, the question is not whether Plaintiff is *likely* to obtain such an award, or whether Kraft Heinz would have viable defenses to an aggregate award of statutory damages; instead, the relevant question is whether such an award is legally possible.

*Injunctive Relief.* Plaintiff also seeks injunctive relief, including but not limited to an order "enjoining [Kraft Heinz's] conduct found to be in violation of the CPPA" and "requiring [Kraft Heinz] to provide corrective advertising to the residents of the District of Columbia." Compl. at 21 (Prayer for Relief). Although the injunctive relief Plaintiff seeks is not entirely clear, its cost to Kraft Heinz could easily exceed $5 million. For example, if this Court enjoined Kraft Heinz from selling the Product, Kraft Heinz would need to cease all sales of the Product in the District of Columbia—which would require it to take steps to ensure that the Product was no longer distributed into the District of Columbia for resale, to remove the Product from store shelves, and to forego hundreds of thousands (if not millions) of dollars in future sales.

Alternatively, if this Court ordered Kraft Heinz to reformulate the Product to comply with an injunction, Kraft Heinz would need to initiate an overhaul of its supply chain and manufacturing process. It would also need to locate suppliers and ingredients that would ensure that the Product contained absolutely no methylene chloride at any time, and it would need to segregate the supply chain—as well as its manufacturing lines—for the Product to ensure no potential of cross-contamination. The cost of such an overhaul could potentially cost millions of dollars.

Even if this Court limited the cost of injunctive relief to "corrective advertising," that cost would still be significant. The costs associated with a "corrective advertising" campaign could include the cost of print, digital, television, and radio advertising into the District of Columbia, as well as the cost of having Kraft Heinz's external marketing firms and internal marketing and creative services develop material for the campaign. It is entirely possible that the cost of such a corrective advertising campaign alone would come close to, or even exceed, $5 million. *See, e.g.*, *Fefferman v. Dr. Pepper Snapple Grp., Inc.*, No. 13-160, 2013 WL 12114486, at *3 (S.D. Cal.

Mar. 12, 2013) (noting that, "[i]n total, the corrective advertisement campaign would cost Defendants approximately $4,985,000").

*Punitive Damages*.  Plaintiff also seeks punitive damages, which the CPPA authorizes it to recover.  *See* Compl. at 21 (Prayer for Relief); D.C. Code § 28-3905(k)(2)(C).  "Punitive damages are properly considered as part of the amount in controversy." *McQueen v. Woodstream Corp.*, 672 F. Supp. 2d 84, 88 (D.D.C. 2009) (citing *Hartigh v. Latin*, 485 F.2d 1068 1071–72 (D.C. Cir. 1973)); *see also Bradford*, 249 F. Supp. 3d at 334 (considering punitive damages in assessing the amount in controversy).  A punitive damages award in this case could potentially exceed $2 million.  *See, e.g.*, *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 41, 54 (D.C. 2010) (affirming punitive damages of $2 million, $1.1 million, and $200,000 against various defendants in a CPPA case).

*Attorneys' Fees.*  Finally, Plaintiff seeks to recover its attorneys' fees, which are also recoverable under the CPPA.  *See* Compl. at 21 (Prayer for Relief); D.C. Code § 28-3905(k)(2)(B). Courts routinely consider attorneys' fees under the CPPA in calculating the amount in controversy. *See, e.g.*, *Sloan*, 2015 WL 9272838, at *9 (noting that "[a]ttorney fees are part of the amount in controversy if they are provided for by statute or contract" and collecting cases).  And fee awards under the CPPA can easily reach into the hundreds of thousands—if not millions—of dollars.  *See, e.g., Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 18, 20 (D.D.C. 2014) (awarding $927,707.89 in attorneys' fees and expenses in a CPPA lawsuit); *Williams v. First Govt' Mortg. & Invr's Corp.*, 225 F.3d 738, 743 (D.C. Cir. 2000) (affirming award of $199,340 in attorneys' fees in a CPPA lawsuit).

In short, the potential statutory damages available under the CPPA—in addition to the potential costs to Kraft Heinz of complying with an injunction, issuing corrective advertising, or

paying punitive damages and attorneys' fees—significantly exceed the minimum amount-in-controversy of $5 million.   Aside from its incorrect assertion that CAFA does not permit aggregation of damages, Plaintiff does not dispute that Kraft Heinz has offered a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.  Absent any evidence or argument to the contrary, this is all CAFA requires.  *See id.* ("Evidence establishing the amount [in controversy] is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation.")*.*

## III.      Alternatively, This Case Is Removable Under 28 U.S.C. § 1332(a).

Finally, even if this Court concluded that this case were not a "class action," it would nonetheless be removable under 28 U.S.C. § 1332(a).  That statute requires only that the parties be completely diverse (which Plaintiff admits they are, *see* Mot. at 12) and that the amount in controversy exceed $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).  Here, as explained above, the cost for Kraft Heinz to comply with Plaintiff's requested injunctive relief would easily exceed $75,000, such that this case satisfies the amount-in-controversy requirement.

Plaintiff argues that removal is improper under 28 U.S.C. § 1332(a) because the "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount." Mot. at 12.  But as the Supreme Court has made clear, the non-aggregation rule does not apply when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."  *Snyder v. Harris*, 394 U.S. 332, 335 (1969).  "[A] common and undivided interest exists when the adversary of the class has no interest in how the claim is to be distributed among the class members."  *Nat'l Welfare Rights Org. v. Weinberger*, 377 F. Supp. 861, 866 (D.D.C. 1974) (citation omitted); *see also Aetna U.S. Healthcare, Inc. v. Hoechst AG*, 48 F. Supp. 2d 37, 41 (D.D.C. 1999) (holding that request for disgorgement "without

reference to any actual damages sustained by any individual plaintiff" constituted an "integrated and aggregable" claim for relief); *Williams v. Purdue Pharma Co.*, No 02-556, 2003 WL 24259557, at *5 (D.D.C. Feb. 27, 2003) (holding that request for disgorgement and statutory penalties under the CPPA constituted a "common and undivided remedy").

Courts around the country have applied this principle to hold that there is a "common and undivided interest in the injunctive relief" requested by a plaintiff if the injunction "will benefit the class as a whole" and the defendant's cost of compliance does not depend on the number of plaintiffs or the identity of their members. *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 835–36 (E.D. Mich. 1999); *see also, e.g.*, *Hoffman v. Vulcan Materials Co.*, 19 F. Supp. 2d 475, 483 (M.D.N.C. 1998) ("[B]ecause the defendant will sustain this loss even if only one plaintiff were to obtain the injunction, this is a case where plaintiffs have an undivided interest in the injunction so the loss will be attributed to each plaintiff."). So long as "the cost to each defendant of an injunction running in favor of one plaintiff" exceeds $75,000, the fact that there are other plaintiffs is irrelevant, as the injunction "would cost the same" to the defendant in any event. *Synfuel Techs., Inc. v. DHL Express (USA) Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) (citation omitted).

Relying primarily on *Witte v. General Nutrition Corp.*, 104 F. Supp. 3d 1 (D.D.C. 2015), Plaintiff argues that this Court must disaggregate the cost of complying with an injunction across all of the members of the "general public" Plaintiff purports to represent. Mot. at 12-13. But *Witte* reached that conclusion only after concluding that "plaintiff and the members of the public he represents have separate and distinct claims for relief against defendants." 104 F. Supp. 3d at 6. If that premise is true, and if Plaintiff purports to represent multiple members of the "general public" who have "separate and distinct" claims against Kraft Heinz, then it is even clearer that

this case is a "class action" removable under CAFA.  If that premise is false, and the "general public" has a common interest in the injunctive relief Plaintiff seeks, then this case is removable under section 1332(a) because the injunction represents a single, undivided recovery with a value that does not depend on the number of individuals who comprise the "general public."  Plaintiff cannot have it both ways.

## CONCLUSION

Kraft Heinz respectfully requests that the Court deny Plaintiff's motion to remand.


Dated: December 7, 2020                          Respectfully submitted,

                                                 JENNER & BLOCK LLP

                                                 By:  /s/ Previn Warren

                                                 Previn Warren (#1022447)
                                                 1099 New York Ave., NW, Suite 900
                                                 Washington, DC 20001
                                                 (202) 639-6000
                                                 pwarren@jenner.com

                                                 Attorneys for Defendant
                                                 The Kraft Heinz Company